Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Delighted you're here. We have several matters for argument, but before we do that, we have two cases that we need to submit. They are Martinez-Hernandez v. Garland and Rivera-Mendez v. Garland. Those two cases are submitted. Our first argued case today is Diego-Aguirre v. Garland. And I believe, let's see, we've got Mr. Nelson is for the petitioner, I believe, and then Mr. Peck for the government. So Mr. Nelson, you're first. Please proceed. Thank you, Your Honor. May it please the Court, my name is Douglas Nelson on behalf of the petitioners. This case involves the definition of social group. We live in the United States in a western country which is famous for protecting the rights of women. For time immemorial, humankind has not protected women. And sadly, there are still pockets in the world that do not protect women. And Guatemala is one of those areas, as illustrated by the country reports, and by this particular case. This petitioner belongs to several groups that deserve protection. First, she's considered a second-class citizen in her country because of her Mayan, Cancobal, indigenous background. And she's considered a third-class citizen because she's a female. She doesn't receive the protection. Mr. Nelson, if I may, I totally agree with you about what you're saying. But the problem that we're dealing with here, as I see it, is even if there's a PSG, where's nexus? I don't see the nexus to any PSG that was described in your plea. Can you help me with that, please? Yes, sir, I'm happy to. My lights went out. There we are. Uh-oh. I'm back. All right. So I think her strongest PSG is women subjected to abuse by men in a society that does not adequately protect women. If this were a Canadian case, she would receive adequate protection. But because this comes from a country that does not protect persons in her groups, it is a viable case. Is that why she didn't talk to anybody or don't report it to anybody? Correct. In fact, she was so afraid to report it to anyone that she didn't report it to her father for fear that one of the males who was persecuting her would murder her father. Well, two of them got drunk and sort of assaulted her in the household, didn't they? Correct. And she told her husband about it. Correct, Your Honor. And I think those instances are also illustrative of how men believe that they can get away with this type of behavior in that country. Well, they do that in this country, too, don't they? That's correct. But there is a difference. And if I can illustrate the difference, we have the same problems as the entire world does, but we have a lot less of them. These types of sexual assaults... If you don't report it, whether it's in the United States or in Guatemala, you can't expect much to happen. I agree. And the country reports for this case illustrate that there are about 11,000 reports, but only 600 convictions in Guatemala. But notice that doesn't count the many people who did report, which you've raised. They don't report it because they're afraid to. They just simply don't receive the protections. And there is an analogy in the United States that we've experienced recently. It's the hashtag MeToo movement. Women in Hollywood were afraid to come forward with the assaults that they had been suffering for years until only recently. It took a lot of bravery in our country for them to come forward with those assaults. Now imagine trying to come forward with those reports of assault in countries that do not protect them. I don't think you've really addressed Judge Smith's question about nexus because the agency viewed this case as being... These were bad men who were drunk who wanted what they wanted and that was why they acted and not because they said, oh, she's a woman subjected to so that's not the nexus. Can you address why the agency was wrong in its nexus determination? Yes, sir. The primary questions are whether these persecutors perceived a trait common to her particular social group, which they could exploit, and then whether their perceived reaction was based on that perception. What did these men see? They saw a woman who belonged to a second-class mine concobalt who they knew would not receive protection from the police and they also saw a female that they wanted to exploit sexually. If she fell in any other group, non-indigenous or not a female, this would not have happened. A key component again when you're examining the persecution she suffered is whether they thought they could get away with that. Counsel, with respect, I wholeheartedly agree with you about the plight of women in Guatemala. I agree that there's some problems in our country that are the same situation, but as you can tell, we're all struggling with the fact that you've got all these alleged PSGs, whether or not they are valid or not, we'll put that to the record, that the acts that occurred are, the nexus is to the PSG. And honestly, I don't see it with respect to any of them. Will you point to me in the record, with respect to any of the PSGs alleged, where you believe that the nexus was shown by substantial evidence? Or in the record? Well, I think the behaviors speak for themselves. No, I don't want a general answer, I want a specific answer. Where in the record do you have evidence, substantial evidence that you could point to that shows that there was a nexus between the attacks and the actions of these people that ties to any one of the PSGs that you've alleged? Specifically, where? It's difficult to point out for the following reasons, Your Honor. Because we don't have a declaration, a declaratory statement from the persecutor stating these are the reasons why we wanted to harm the petitioner. It doesn't exist. It's not that clear. It wouldn't be clear in this type of circumstance where it's a sexual assault. I can't imagine a scenario of a sexual assault where the persecutor or the perpetrator says, I'm doing this because you're a woman. They do it because, well, they know the person is a female who can be exploited. But a little bit deeper and implied in your question is that there should be a clear standard, and that is admittedly a real big problem for all of us trying to adjudicate these cases. It's a very arcane and difficult standard to understand, and it doesn't allow us to protect all those who are deserving. And you may very well be correct, but the reality is we have to follow the law, and the law says that you bear the burden on behalf of your client to show by substantial evidence that the actions taken, any one of them, are, there's a nexus to any of the PSGs that you I'm asking you in moral argument, can you point to anything that ties up the nexus? And if you can't, how can we rule in your favor? I think that what does, well, let me back up just one second. This is a very fact-specific analysis which has to be made in each of these PSG cases. And the facts in this case are that many of the males in these females' lives, both the daughter and the petitioner, okay, many of the males acted abusively, sexually abusively towards these females. And these females happened to belong to a third-class group, both indigenous and female. And the extent of this happening to females and to marginalized indigenous communities, those are the facts that support the nexus. And if it were not for their gender or sex, they wouldn't be suffering the same harm. That's, of course, true. I mean, in terms of sexual attacks, males against females, of course, sex makes the difference. But every woman, in this case, in Guatemala, would fit into that category, and it doesn't qualify as a PSG. It's not distinct, et cetera, et cetera, in the way that a PSG has to be. Again, I empathize with your clients. I mean, what happens is horrible. And under our coward case, it clearly can be fast persecution, but you still have to show a nexus. And with respect, I don't see it. If I may, you noted an important fact that would this cover all Guatemalan females, and it would not. At some point, the society decides that there exist groups we want to persecute, that the people in control want to harm particular groups. I'm running out of time, but if I'm given any rebuttal, I'm happy to. We have now run out of time. We'll see about any rebuttal, but I don't think either of my colleagues have any questions right now. Okay, if not, let's hear from the government then. Good morning, and may it please the Court. Greg Mack for the Attorney General. No one disputes that gangs and violence are disconcerting to some in Guatemala, but asylum is reserved for those with specific protected characteristics. It is not a cure-all, and that motive is key. Judge Smith, as you pointed out, substantial evidence is key. I think what just happened in this case for about eight or nine minutes before the Court, we all had a mini-immigration judge hearing, because it was all about sort of de novo arguments to this Court about the bad things that transpired in this case, but you asked a key question on substantial evidence. The record has to compel the conclusion that nexus exists here, and it simply doesn't. What we have here is that in 2012 and 2014, the lead petitioner's daughter was accosted and assaulted by gang members, apparently on the way to or from school. And later, the lead petitioner herself was accosted and assaulted by, admittedly, by a petitioner and her partner, drunk members of her partner's family in the home that she stayed in. No reporting to authorities, and there's no evidence that compels the conclusion that any nexus exists here with respect to particular social groups. You have a question, Judge Compton? Do you construe the BIA's decision as resting just on nexus, or do you also view it in light of its citation of Burbano as also resting on this idea that the harms did not rise to the level of persecution? I think the board picked up the past persecution finding as well, because it says it adopts and affirms the immigration judge's decision, and the immigration judge clearly discusses past persecution. And do you think that the kind of behavior described, suppose it had been done by, you assault, doesn't rise to the level of persecution? No, no it doesn't, because it's clearly its personal nature here. I take your point that to assume... To say it's personal nature is to go to nexus. I'm saying the conduct that occurred, and I'm changing all the other elements so that I can isolate this issue of rise to the level. Suppose that it's clear nexus to a protected ground. Does the kind of conduct that is at issue here rise to the level of persecution if all those other elements are met? No, no it does not. It's not extreme or particularly menacing in this particular case. So you're sexually assaulting someone based on their membership in a protected group or political opinion, that doesn't rise to the level of persecution? Well I think as the immigration judge noted here, petitioner was able to rebuff the advances by the drunken members of her family. I take your point, if we assume that this was by the military, and we assume that this was a sexual assault by military members because of a particular protected characteristics, we might have an entirely different case. But that would give the immigration judge the opportunity... So that suggests that the rise to the level of holding is just wrong. I mean, whether we view that, and there's an issue whether we review that de novo or for substantial evidence, but even if it's just for substantial evidence, that seems hard to credit. Well I think, as you point out, nexus is key here, and if it just rose or fell on whether it rose to the level of persecution, the court might have a different case. But I think the immigration judge would have the leeway to look at what happened in a particular case involving the Guatemalan military on this set of facts, whether it rose to the level of persecution. I clearly take your point that the attempted sexual assault and sexual assault may in general rise to the level of persecution, but the immigration judge has to look at the particular facts of the case. I should say, the Cower case, if I understand it correctly, indeed found that attempted rape was past persecution. The question here is, at least in my mind, assuming that you had past persecution, is there a nexus to a PSG? And that's what I don't find. That's correct, there isn't a nexus. I mean, certainly if the case didn't have anything to do with nexus and we were simply here on past persecution, we can argue that day and night on whether it's de novo or for substantial evidence review, but I'm just responding to the fact that I think an immigration judge would still have to have all the facts in front of himself or herself to answer the question of whether a particular Guatemalan military's assault under these facts rose to the level of persecution. And I wouldn't simply say or concede that absolutely yes, in every circumstance, it rose to the level of persecution. But again, here, as I mentioned, we had about eight minutes of an immigration judge hearing with a de novo claim on nexus, but that's not the court's role. Your role is to consider substantial evidence, and whether the decisions of the agency, the facts compel reversal of the agency's decision, and the facts on this record simply don't do that. Now, of course, we all recognize it's unfortunate that all this transpired, that the lead petitioner's daughter was accosted by gay members on the way to and from school, and that petitioner, the lead petitioner, was accosted in the home that she lived in. But the answer is not to, the default answer is not to flee to the United States. There was no reporting to authorities here. And as I mentioned at the top, asylum is not a cure-all. Motive is key. Go ahead, Your Honor. So if I can distill what I understand the government's argument to be, you're saying that attempted rape can be passed persecution, but there's no nexus here with respect to I didn't mention the Catt claim, but I gather here on the Catt claim there's no evidence that there would be no, that there would be government actors involved in acquiescing in any torture, because they didn't even report that, right? That's correct, Your Honor. As well as in our brief, we pointed out that one of the factors that you look at with respect to Catt is whether there was any past torture, and petitioners weighed that issue in their opening brief. So we don't have a point of past torture in this case, and our brief clearly points out that there was simply no acquiescence, because, again, there was no reporting. The authorities weren't aware of this particular incident, so there wouldn't be any acquiescence for the purposes of Catt. I didn't ask the court to deny the petition. Any other questions by my colleagues? All right, I think not. Okay, thank you very much. Okay, we're going to, because the government was so kind as to not use up its entire time, we're going to give you a minute for rebuttal, so please proceed. I appreciate it. Thank you. There is substantial evidence in the record in the U.S. country reports that show that this person does belong to a marginalized community, that sexual assault and rape is a serious problem, classified as a serious problem in Guatemala, and the credible testimony establishes that she, in fact, suffered those things. You would agree that the country reports don't require a contrary conclusion than the one that was made here? Correct. Okay, thank you. Okay. Oh, I'm sorry, a contrary conclusion to what the judge said, or what the immigration judge decided? Yes. Oh, no, I do believe they compel a different decision. I think contrary to the Velazquez gas bar versus bar case, where we specifically held that the country reports don't require a contrary conclusion, just because it's a country report. Excuse me. Yeah, I think that the judge did not give sufficient weight to that report, and the substantial evidence indicates that this family should have been found to have suffered mass persecution. Thank you. Very well. Thanks to both counsel for your argument. The case, we appreciate it. The case is submitted.
judges: Kelly, SMITH, COLLINS